XAVIER BECERRA
Attorney General of California
SUSAN S. FIERING, State Bar No. 121621
Supervising Deputy Attorney General
ROSE B. FUA, State Bar No. 119757
HEATHER C. LESLIE, State Bar No. 305095
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA 94612-0550
  Telephone: (510) 879-0190
  Fax: (510) 622-2270
  E-mail: Rose.Fua@doj.ca.gov
*Attorneys for California Department of Toxic
Substances Control*

**FILED**

**JUN 1 9 2018**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>Defendant. | 2:16-cv-02897-JAM-AC<br><br>**CONSENT DECREE**<br><br>Judge: John A. Mendez<br>Action Filed: December 9, 2016 |

**INTRODUCTION**

Plaintiff, the Department of Toxic Substances Control ("DTSC"), filed its Complaint for

Recovery of Response Costs and Declaratory Relief ("Complaint") on December 9, 2016, in the

United States District Court for the Eastern District of California (the "Court"), pursuant to

sections 107(a) and 113(g) of the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g). This Consent Decree embodies

the settlement reached between DTSC and the Defendant, the United States of America (the

1

1   "United States," on behalf of "Settling Federal Agencies").

2        The Court, after review of the proposed settlement and consent decree and with the

3   consent of DTSC and the United States, hereby ORDERS, ADJUDGES, and DECREES as

4   follows:

5       1.   **DEFINITIONS**

6       1.1   All terms used in this Consent Decree that are defined in section 101 of CERCLA, 42

7   U.S.C. § 9601, shall have the same meaning as set forth in that section.

8       1.2   "DTSC" shall mean DTSC, its predecessors including, but not limited to the Toxic

9   Substances Control Program of the State of California Department of Health Services, and its

10  successors.

11      1.3   "Effective Date" is the day on which this Consent Decree is entered as an order of the

12  Court.

13      1.4   "Matters Addressed" by this Consent Decree are defined as any and all civil liability

14  of the Settling Federal Agencies, pursuant to CERCLA, or any other statute, regulation, or

15  common law theory for reimbursement of all or any portion of response costs, past or future,

16  incurred or to be incurred by DTSC, or by any other entity that is not a party to this Consent

17  Decree, in response to releases or threatened releases of hazardous substances occurring at, in, or

18  from the Site prior to the signature of this Consent Decree by the United States.  Matters

19  Addressed does not include any matters identified in Section 7, Reservation of Rights, of this

20  Consent Decree.

21      1.5   "Response Costs" shall include all costs of "removal," "remedial action," or

22  "response", incurred or to be incurred by DTSC, or by any third person or entity not a party to

23  this Consent Decree that incurred costs pursuant to state administrative orders related to this Site,

24  in response to the release or threatened release of hazardous substances at, in, or from the Site.

25  Said term shall include, but not be limited to, direct labor costs; contractor, consultant and expert

26  costs; travel and any other out-of-pocket expenses; the costs of identifying, developing evidence

27  against, and pursuing claims against persons or entities, alleged to be liable for the release or

28

1  threatened release of hazardous substances at, in, or from the Site; indirect costs; and oversight
2  costs.

3       1.6.   "Settling Federal Agencies" means the Department of Defense, the Department of the
4  Army, the United States Army Corps of Engineers ("USACE"), and the General Services
5  Administration.

6       1.7   "Site" means the properties known as 711 and 750 Jackson Street, Benicia, Solano
7  County, California (identified by Assessor's Parcel number 0080-14-0440) and 938, 940, 942,
8  945, 946, 952, and 954 Tyler Street; 963, 965, 967, 969, 971, 973, 977, 979, 981, 983, 985, 989,
9  and 991 Lincoln Street; and 900 and 954 Jackson Street, Benicia, Solano County, California
10  (identified by Assessor's Parcel numbers 0080-28-0010, 0080-28-0030, 0080-28-0040, 0080-28-
11  0050) and all locations where hazardous substances released at, in, or from those addresses may
12  come to be located in the future.

13       2.   **RECITALS**

14       2.1   DTSC is the California state agency with primary jurisdiction over the response to the
15  release and threatened release of hazardous substances at, in, or from the Site.

16       2.2   By and through its Complaint, DTSC seeks to recover jointly and severally from the
17  United States all costs it has incurred in response to releases and/or threatened releases of
18  hazardous substances at, in, or from the Site, pursuant to section 107(a) of CERCLA, 42 U.S.C. §
19  9607(a).  DTSC also seeks a declaratory judgment that the United States is jointly and severally
20  liable for all additional costs incurred by DTSC in response to the releases and/or threatened
21  releases of hazardous substances at, in, or from the Site pursuant to section 113(g)(2) of
22  CERCLA, 42 U.S.C. § 9613(g)(2).

23       2.3   In its Complaint, DTSC alleges, *inter alia*, that:  the United States owned and
24  operated the Site as part of the larger former Benicia Arsenal ("Arsenal") from 1849 until 1965
25  and conducted a variety of operations that released hazardous substances, including, but not
26  limited to, lead and trichloroethylene and its breakdown products, including cis-1,2-
27  dichloroethene and vinyl chloride, into the environment.

28

1      2.4    The Arsenal, located in Solano County, California, consisted of approximately

2    2,728.4 acres that was acquired by the United States between 1849 and 1958 for the purpose of

3    maintaining a military installation.  The Arsenal served as the principal depot for ordnance,

4    issuance (supplies, ammunition, small arms parts, and accessories), the testing of small arms,

5    mobile and seacoast artillery targets, and vehicle maintenance for the Division of the Pacific.

6      2.5    The United States represents the following:  the Arsenal was continuously occupied

7    by the military from its establishment in 1849 to its closure in 1964.  The United States'

8    deactivation and closure of the Arsenal was completed in 1964.  The former Arsenal, with the

9    exception of 1.33 acres of cemetery retained by the United States, was conveyed by Quit Claim

10   deeds to the City of Benicia, which subsequently conveyed most of the former Arsenal to Benicia

11   Industries to develop an industrial business park.  Areas within the former Arsenal have been

12   developed with residences, industry and commercial business operations, and a portion is

13   operated as a deep water port.

14     2.6    The United States represents the following:  beginning in the 1990s, the USACE,

15   Sacramento District, conducted research and investigations under the Defense Environmental

16   Restoration Program for Formerly Used Defense Sites, ("DERP-FUDS") to identify chemicals

17   used in historic military operations of the Arsenal and produced a Records Research Report and

18   Preliminary Assessment that distinguished locations within the former Arsenal requiring no

19   further action ("NDAI") from those requiring more investigation.  The USACE shared the results

20   of the investigations with DTSC.

21     2.7    The United States represents the following:  USACE subsurface investigations

22   determined that trichloroethene (TCE) and its degradation products (cis-1,2-dichloroethene, trans-

23   1,2-dichloroethene and vinyl chloride), polyaromatic hydrocarbons (PAHs), petroleum

24   hydrocarbons, and lead were contaminants of interest in soil and groundwater in portions of an

25   area that had been historically and is currently used as an industrial area, designated Area I.  As

26   part of its DERP-FUDS investigation, the USACE determined that post-Army beneficial uses,

27   including aluminum wheel manufacturing, ironworks and welding activities, and transmission

28

4

1 | repair facilities, among other uses, on the property potentially contributed to the TCE, petroleum

2 | hydrocarbon (including MTBE[1]), lead and other known contamination at the Site.

3 |     2.8   The Site that is the subject of this litigation consists of several building complexes

4 | and land located in the designated Area I (industrial) portion of the former Arsenal.

5 |     2.9   In 2014, DTSC issued Imminent and Substantial Endangerment Orders ("ISE

6 | Orders"), as amended, to current and former owners and operators at the Site.

7 |     2.10  On or about December 9, 2016, DTSC initiated the above-captioned case, seeking

8 | cost recovery and declaratory relief under CERCLA sections 107(a) and 113(g), 42 U.S.C. §§

9 | 9607 and 9613.

10 |     2.11  Unless expressly stated otherwise, DTSC and the United States represent and

11 | acknowledge that, in deciding whether to enter this Consent Decree, they have not relied on any

12 | statement of fact, statement of opinion, or representation, express or implied, made by any other

13 | party to this Consent Decree other than the investigatory reports known to DTSC and the Settling

14 | Federal Agencies and DTSC's estimate of past and future costs for this Site.  DTSC and the

15 | United States have investigated the subject matter of this Consent Decree to the extent necessary

16 | to make a rational and informed decision to execute it and each has had the opportunity to consult

17 | with independent counsel.

18 |     2.12  DTSC and the United States agree that settlement without further litigation and

19 | without the admission or adjudication of any issue of fact or law is the most appropriate means of

20 | resolving this action.  This Consent Decree was negotiated and executed by DTSC and the United

21 | States in good faith to avoid prolonged litigation.  DTSC and the United States, moreover, have

22 | negotiated this Consent Decree to further the public interest and to protect human health and the

23 | environment.

---

[1] MTBE, methyl tert-butyl ether, is a gasoline additive that was first used in the United States in 1979 as an octane enhancer. *See, e.g.,* https://www.cancer.org/cancer/cancer-causes/mtbe.html. Thus, the United States contends that MTBE contamination could not have occurred during the Army's occupation of the Benicia Arsenal, which ended in 1964.

5

3.   **JURISDICTION**

This Court has jurisdiction over this action and over the United States pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1331 and 42 U.S.C § 9613(b). Further, this Court has the authority to enter this Consent Decree as a decree of the Court.

4.   **SETTLEMENT OF DISPUTED CLAIMS**

4.1   This Consent Decree represents a fair, reasonable, and equitable settlement of the matters addressed herein.

4.2   For the purposes of this Consent Decree, the United States admits none of the allegations of the Complaint. Nothing in this Consent Decree shall be construed as an admission of any issue of law or fact or of any violation of law. Notwithstanding the foregoing, the United States acknowledges its responsibility pursuant to Paragraphs 5, 8, 10.2, and 18 of this Consent Decree and shall not deny such responsibility in any proceeding brought by DTSC to enforce this Consent Decree.

4.3   Except as set forth in Section 8 of this Consent Decree, nothing in this Consent Decree shall prejudice, waive, or impair any right, remedy, or defense that the United States may have in any other or further legal proceeding.

4.4   In an effort to resolve past and future costs, DTSC provided to the United States a summary of past costs. DTSC and the United States negotiated about the amount of the past costs and agreed to a total of $595,100.54 through April 2017. For future costs, DTSC used the Remedial Action Cost Engineering and Requirements ("RACER") software, which was developed by the United States Environmental Protection Agency ("USEPA") for estimating future response costs, and made a bona fide estimate that the potential future costs associated with the response actions needed to adequately address the known hazardous substances released at the Site would total $5,951,477.00. The total of DTSC's agreed to past costs and estimated future costs for the Site are $6,546,577.54.

4.5   In order to avoid protracted litigation, including third-party claims identified by the United States, and to allow response actions to commence without any further delay, DTSC and

6

Case 2:16-cv-02897-JAM-AC   Document 14-1   Filed 12/15/17   Page 7 of 16


1  the United States agreed, pursuant to the terms contained herein, the United States will pay, on

2  behalf of the Settling Federal Agencies, eighty-four percent (84%) of the agreed upon past and

3  estimated future costs as a one-time payment. That settlement amount is $5,499,125.13. In

4  addition, in order to ensure that the funding can adequately address the potential for future cost

5  overruns and to obtain full contribution protection, the United States has agreed to pay a fifteen

6  percent (15%) premium on the estimated future costs resulting in an additional premium payment

7  of $892,721.55. Under this Consent Decree, the total settlement amount to be paid by the United

8  States, on behalf of the Settling Federal Agencies associated with the former Arsenal, to DTSC is

9  $6,391,846.68.

10  **5.   PAYMENTS BY THE UNITED STATES**

11  5.1   As soon as reasonably possible after the Effective Date, the United States, on behalf

12  of the Settling Federal Agencies, shall pay to DTSC the sum of $6,391,846.68. The payment to

13  DTSC shall be made on or within sixty (60) days from the Effective Date of this Agreement. If

14  the United States on behalf of the Settling Federal Agencies does not pay this amount in full on or

15  within sixty (60) days from the Effective Date, then interest shall begin to accrue on the unpaid

16  balance. Interest shall accrue at the rate specified for interest on investments of the Hazardous

17  Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United

18  States Code, commencing on the 61st day after the Effective Date and accruing through the date

19  of the payment.

20  5.2   The payments described in Section 5.1 will be made by electronic fund transfer.

21  Copies of all payments or notices of electronic payments shall be sent to:

22         Charlie Ridenour
              Branch Chief, Cleanup Program – Sacramento Office
23         Department of Toxic Substances Control
              8800 Cal Center Drive
24         Sacramento, CA 95826
              Charlie.Ridenour@dtsc.ca.gov
25
              Rose B. Fua
26         Deputy Attorney General
              California Department of Justice
27         1515 Clay Street, 20th Floor
              P.O. Box 70550
28         Oakland, CA 94612-0550

Consent Decree (2:16-cv-02897-JAM-AC)

1    Rose.Fua@doj.ca.gov

2    5.3    DTSC and the United States recognize and acknowledge that the payment obligations

3    of the United States on behalf of the Settling Federal Agencies under this Consent Decree can

4    only be paid from appropriated funds legally available for such purpose.  Nothing in this Consent

5    Decree shall be interpreted or construed as a commitment or requirement that the United States

6    obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other

7    applicable provision of law.

8    6.    **COVENANT NOT TO SUE BY DTSC**

9            Except as specifically provided for in Section 7 below, and except as may be

10   necessary to enforce the terms of this Consent Decree, as of the Effective Date, DTSC covenants

11   not to sue the Settling Federal Agencies for the Matters Addressed by this Consent Decree.

12   7.    **RESERVATION OF RIGHTS**

13   7.1    The Covenant Not to Sue set forth in Section 6 above does not pertain to any matters

14   other than those expressly specified therein.  DTSC reserves, and this Consent Decree is without

15   prejudice to all rights and claims of DTSC against the Settling Federal Agencies and any other

16   person with respect to all other matters, including, but not limited to, the following:

17       (a)    Failure of the United States to meet its obligations under Paragraphs 5, 8, 10.2,

18           and 18 of this Consent Decree;

19       (b)    Damage to natural resources, as defined in section 101(6) of CERCLA, 42

20           U.S.C. § 9601(6), including all costs incurred by any natural resources trustees;

21       (c)    Liability resulting from the United States' introduction of any hazardous

22           substance, pollutant, or contaminant to the Site after the signature of this Consent

23           Decree by the United States;

24       (d)    Liability resulting from acts by the United States after the signature of this

25           Consent Decree by the United States that cause the exacerbation of the hazardous

26           substance conditions existing at or from the Site;

27       (e)    Liability based on the ownership or operation of the Site by the United States

28

8

1         when such ownership or operation commences after the signature of this Consent

2         Decree by the United States;

3         (f)     Liability arising from the past, present, or future disposal of hazardous

4         substances at sites or locations other than the Site; and

5         (g)     Criminal liability.

6     7.2.    Except as expressly provided in this Consent Decree, nothing in this Consent Decree

7 is intended to nor shall it be construed to preclude DTSC from exercising its existing authority

8 under any law, statute, or regulation, and nothing in this Consent Decree is intended, nor shall it

9 be construed, to preclude any other state agency, department, board, or entity or any federal

10 entity, including the United States Environmental Protection Agency or a federal natural resource

11 trustee, from exercising its authority under any law, statute, or regulation.

12     7.3.    Notwithstanding any other provision in the Consent Decree, DTSC reserves the right

13 to institute proceedings in this action or in a new action against the United States seeking any

14 remedy allowed by law, if:  conditions previously unknown to DTSC, for which the United States

15 is potentially liable under any statute or law, are discovered at the Site after the Effective Date

16 and these conditions indicate that (1) a previously unknown hazardous substance has been or is

17 being released at the Site, there is a threat of such release into the environment, or previously

18 unknown ordnance or radiological material are discovered at the Site and (2) the response

19 performed at the Site is not protective of human health and the environment.

20    8.   **COVENANT NOT TO SUE BY THE UNITED STATES ON BEHALF OF THE**

21     **SETTLING FEDERAL AGENCIES**

22     The United States on behalf of the Settling Federal Agencies covenants not to sue,

23 and agrees not to assert any claims or causes of action against, DTSC, or its contractors,

24 employees, or attorneys for any costs or damages the Settling Federal Agencies might incur or for

25 any injuries or losses the Settling Federal Agencies might suffer as a result of their obligations

26 under this Consent Decree.  The United States on behalf of the Settling Federal Agencies further

27 covenants not to sue, and agrees not to assert any claims or causes of action against, DTSC, or its

28 contractors, employees, or attorneys, for any and all civil liability for reimbursement of all or any

9

1  portion of the Settling Federal Agencies' response costs, past or future, declaratory relief,

2  injunctive relief, or any other relief under CERCLA with regard to releases or threatened releases

3  of hazardous substances at, in, or from the Site.

4      9.   **EFFECT OF THE CONSENT DECREE**

5      9.1   This Consent Decree constitutes the resolution of the Settling Federal Agencies'

6  alleged liability with respect to the Matters Addressed in a judicially approved settlement within

7  the meaning of section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

8      9.2   Accordingly, upon entry of this Consent Decree as a consent decree of the Court, and

9  provided that the United States, on behalf of the Settling Federal Agencies, performs all of its

10  obligations under this Consent Decree, the Settling Federal Agencies shall be entitled, as of the

11  Effective Date, to protection against all claims for contribution, pursuant to section 113(f)(2) of

12  CERCLA, 42 U.S.C. § 9613(f)(2), for the Matters Addressed by this Consent Decree, to the

13  fullest extent of the law.

14      9.3   Except as specifically provided in this Consent Decree, nothing in this Consent

15  Decree is intended, nor shall be construed, to waive, release, or otherwise affect any right, claim,

16  or cause of action held by any party to this Consent Decree against, or to provide a covenant not

17  to sue to, any third person not a party to this Consent Decree, or to in any way limit, restrict, or

18  impair the right of any party to this Consent Decree to assert rights, claims, causes of action, and

19  defenses against any third person not a party to this Consent Decree, including without limitation,

20  the right to seek payment, reimbursement, contribution, or indemnity from such persons for

21  obligations incurred or to be incurred, or actions taken or to be taken, under this Consent Decree.

22  Except as specifically provided in this Consent Decree, DTSC and the United States expressly

23  reserve any rights, claims, or causes of action they might have against any third persons not a

24  party to this Consent Decree.

25      9.4   This Consent Decree is contingent and dependent on all of its terms being approved

26  and entered by the Court. If the Court does not approve and enter this Consent Decree, DTSC

27  and the United States reserve all their respective rights, remedies, and defenses.

28

10

1        9.5    This Consent Decree is not intended, nor shall it be construed, to limit or otherwise

2    affect DTSC's right to select a response action for the Site.

3        10.   **NOTIFICATION**

4        10.1   Notification to or communication between DTSC and the United States as required or

5    provided for in this Consent Decree shall be addressed as follows:

6        As to DTSC:

7        Charlie Ridenour
    Branch Chief, Cleanup Program – Sacramento Office
8        Department of Toxic Substances Control
    8800 Cal Center Drive
9        Sacramento, CA 95826

10       Rose B. Fua
    Deputy Attorney General
11       California Department of Justice
    1515 Clay Street, 20th Floor
12       P.O. Box 70550
    Oakland, CA 94612-0550
13
    As to the United States:
14       Letitia J. Grishaw,
    Chief, Environmental Defense Section
15       United States Department of Justice
    P.O. Box 7611
16       Washington, D.C. 20044-7611

17

18       Mark A. Rigau
    Trial Attorney
19       United States Department of Justice
    301 Howard Street, Suite 1050
20       San Francisco, CA 94105

21

22       10.2   Upon 10 days written notice to the other party, a party to this Consent Decree may

23   substitute another person for an addressee named above to receive notifications or

24   communications as required or provided for in this Consent Decree.

25       11.   **MODIFICATION OF THE CONSENT DECREE**

26       The Consent Decree may only be modified upon the written agreement of DTSC and

27   the United States and the approval of the Court or, following entry of this Consent Decree, upon

28   order of the Court after noticed motion by a party to this Consent Decree.

11

1    12.   **APPLICATION OF THE CONSENT DECREE**

2           This Consent Decree shall apply to and be binding upon DTSC, the United States and

3    Settling Federal Agencies, and each of their respective successors and assigns.  The provisions of

4    this Consent Decree shall inure to the benefit of DTSC, the United States and Settling Federal

5    Agencies, and each of their respective successors and assigns.

6    13.   **INTEGRATION**

7           This Consent Decree, including any exhibits and materials incorporated herein by

8    reference, constitutes the entire agreement between DTSC and the United States, on behalf of the

9    Settling Federal Agencies, and may not be amended or supplemented except as provided for in

10   this Consent Decree.

11   14.   **RETENTION OF JURISDICTION**

12          The Court shall retain jurisdiction of this matter for the purpose of interpreting and

13   enforcing the terms of this Consent Decree.

14   15.   **EXECUTION OF DECREE**

15          This Consent Decree may be executed in two or more counterparts, each of which

16   shall be deemed an original, but all of which together shall constitute one and the same

17   instrument.

18   16.   **INTERPRETATION**

19          This Consent Decree shall be deemed to have been drafted equally and by all parties

20   hereto.

21   17.   **ATTORNEYS' FEES AND COSTS**

22          Except as provided in paragraph 18, as to each other, DTSC and the United States on

23   behalf of Settling Federal Agencies, shall bear their own costs, attorneys' fees, and all other costs

24   of litigation. This paragraph shall have no effect on the rights of DTSC, the United States, or the

25   Settling Federal Agencies to recover these fees or costs from any other party.

26

27

28

12

18. **FAILURE TO COMPLY WITH THE CONSENT DECREE**

If DTSC must bring an action to enforce this Consent Decree, the United States, on behalf of Settling Federal Agencies, shall reimburse DTSC for all costs of such action, including, but not limited to, attorneys' fees.

19. **APPROVAL OF PARTIES**

DTSC and the United States consent to this Consent Decree by their authorized representatives.

20. **ENTRY OF THE CONSENT DECREE**

This Consent Decree shall be signed and lodged with the Court for a period of not less than sixty (60) calendar days for public notice and comment. DTSC shall file with the Court any written comments received and DTSC's responses thereto. DTSC may withdraw its consent to this Consent Decree if comments received during the public comment period disclose facts or considerations that DTSC believes indicate this Consent Decree is inappropriate, improper, or inadequate. The United States consents to the entry of this Consent Decree without further notice.

21. **AUTHORITY TO ENTER**

Each signatory to this Consent Decree certifies that he or she is fully authorized by the party he or she represents to enter into this Consent Decree, to execute it on behalf of the party represented, and legally to bind that party.

**CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL**

Dated: December 14, 2017

Signature

Mohsen Nazemi, M.S., P.E.
Name

Deputy Director, Site Mit. & Resto. Program
Title

13

1

**THE UNITED STATES OF AMERICA:**

2

3

4

5    Dated: _December 15, 2017_

Signature

6

MARK  A.  RIGAU

7    Name

Trial Attorney

8    Title

9

10    **APPROVED AS TO FORM:**

11

12

13    Dated: _____

Rose B. Fua

14    Heather C. Leslie
Deputy Attorneys General

15    Attorneys for the California Department of
Toxic Substance Control

16

17

18

19    Dated: _December 15, 2017_

JEFFERY H. WOODS

20    Acting Assistant Attorney General
Environment and Nat. Res. Division
United States Department of Justice

21

22    Mark Rigau

23    Trial Attorney
Environment and Nat. Res. Division

24    United States Department of Justice
Attorney for the United States

25    **IT IS SO ORDERED.**

26

27

28

14

**THE UNITED STATES OF AMERICA:**

Dated: _____

_____
Signature

_____
Name

_____
Title

**APPROVED AS TO FORM:**

Dated: 12/15/17

_____
Rose B. Fua
Heather C. Leslie
Deputy Attorneys General
Attorneys for the California Department of
Toxic Substance Control

Dated: _____

JEFFERY H. WOODS
Acting Assistant Attorney General
Environment and Nat. Res. Division
United States Department of Justice

_____
Mark Rigau
Trial Attorney
Environment and Nat. Res. Division
United States Department of Justice
Attorney for the United States

**IT IS SO ORDERED.**

14

Dated: _June 19, 2018_

UNITED STATES DISTRICT COURT
JUDGE JOHN A. MENDEZ

OK201595002
Draft Consent Decree to US (9-8-17)

15